Phyllis J. THOMPSON and David Thompson, through his mother and next friend, Phyllis J. Thompson, Appellants,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellee.

No. 1 CA–CIV 3989.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 16, 1979.

Rehearing Denied Feb. 15, 1979.

Review Denied March 13, 1979.

Ely & Bettini by Sam F. Insana, Phoenix, for appellants.

Gust, Rosenfeld, Divelbess & Henderson by Charles E. James, Jr., Phoenix, for appellee.

## OPINION

OGG, Chief Judge.

The parties to this appeal differ as to whether a motorcycle described as a "dirt bike" is a covered vehicle within the uninsured motorists coverage of the subject automobile insurance policy. For reasons hereinafter stated, we conclude that the vehicle is within the uninsured motorist coverage of the policy, and we accordingly reverse the declaratory judgment entered in favor of the appellee insurance company.

The pertinent facts are relatively simple and without dispute. The appellant, David Thompson, riding a conventional bicycle, was injured in a collision with John Joseph Williams while the latter was operating his

motorcycle. The collision took place on a vacant lot utilized for "dirt bike" riding. The motorcycle was not equipped to be "street legal", that is, it did not have headlights or taillights or other paraphernalia which would make it lawful for use on public streets and highways. The vehicle was not licensed to be driven on the public streets and highways, and Williams testified in depositions that he only infrequently drove the motorcycle on city streets and alleys to get to and from dirt bike riding destinations. There was a sticker on the dirt bike when Williams purchased it, indicating that it was not to be driven on public highways.

The policy in question provides coverage for injuries arising out of an accident involving an uninsured automobile. The word automobile is not itself defined but the policy provides that the term "uninsured automobile" does not include:

(V) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.

It is the position of the insured David Thompson that the motorcycle or "dirt bike" that struck him must be classified as an automobile for it was clearly not "a farm type tractor or equipment" which would exclude coverage under the policy. He contends it is not clear whether the words "farm type" modify "equipment" as well as the word "tractor" and that since the coverage under the exclusionary clause is at least ambiguous, it must be construed in favor of coverage.

The insurance company argues that the term "farm type" does not modify "equipment" and that this particular motorcycle was "equipment" designed for use principally off public roads. The accident did not occur on a public road and therefore the exclusionary clause blocks coverage.

■ For their initial contention that the dirt bike is an "automobile" within the terms of the policy, appellants rely on *Rodriquez v. Maryland Indemnity Insurance Co.*, 24 Ariz.App. 392, 539 P.2d 196 (1975). In *Rodriquez* the court held that pursuant to the policy there under consideration, the term "automobile" included a motorcycle. The appellee here does not concede the issue but cites no verbiage in its policy other than that quoted above as a reason why the same result should not be reached here. We find nothing in the policy here under consideration which excludes a motorcycle from the category of an "automobile". Both are motor vehicles. The dirt bike here could, functionally speaking, be driven as a conventional motorcycle. *Rodriquez* was based in part upon the public policy of our uninsured motorist statute and in accordance with it, we find that the dirt bike in question here is an "automobile" within the terms of the subject policy.

We turn now to the principal question of whether the adjective phrase "farm type" modifies "equipment" as well as "tractor". One of the accepted definitions of "tractor" is a power unit for moving a freight carrying unit such as a semitrailer.[1] In view of the widespread use of this type of tractor on the highways, the words "farm type" could be viewed as merely differentiating the farming implement rather than as qualifying both nouns. Just why this awkwardly described implement has been singled out for specific exclusion is not clear.

Two cases, however, have construed similar language used in this context and have reached a conclusion that the words "farm type" or "farm-type" modified the word "equipment" as well as "tractor".

In *Stepec v. Farmers Insurance Co.*, 301 Minn. 434, 222 N.W.2d 796 (1974), an argument was made that a snowmobile was "equipment" within the meaning of an exclusionary clause like the present one. The court stated:

We have no difficulty in holding that the word "equipment" referred to in the exclusion applies only to farm equipment and does not cover snowmobiles. *Id.* at 436, 222 N.W.2d at 798.

---

1. Webster's Third New International Dictionary 2421 (1969).

In *State Farm Mutual Automobile Insurance Co. v. Mrozek*, 29 Cal.App.3d 113, 105 Cal.Rptr. 189 (1972), the court, construing a like-worded statute, held a dune buggy to be an insured vehicle within the terms of that state's Insurance Code. After quoting extensively from the appellant's argument, the court concluded:

> Interpreting the phrase "farm-type tractor or equipment," we hold the compound adjective "farm-type" modifies both "tractor" and "equipment". There is no comma after "tractor." The phrase reasonably means farm-type tractor or farm-type equipment. *Id.* at 116, 105 Cal.Rptr. at 191.

Appellee cites cases to the contrary: *Kansas Farm Bureau Insurance Co. v. Cool*, 205 Kan. 567, 471 P.2d 352 (1970); *Walcott v. Hawkeye-Security Insurance Co.*, 189 Neb. 161, 201 N.W.2d 817 (1972); *Livingston v. Nationwide Mutual Insurance Co.*, 295 F.Supp. 1122 (D.S.C.1969); *Beagle v. Automobile Club Insurance Co.*, 18 Ohio Op.2d 280, 176 N.E.2d 542 (Ohio C.P.1960); *Beck v. Unigard Insurance Co.*, 271 Or. 261, 531 P.2d 907 (1975); *Williams v. Cimarron Insurance Co.*, 406 S.W.2d 173 (Tex.1966).

*Cool* and *Walcott* held against coverage on language identical to that of the policy here. *Livingston* involved slightly different language and punctuation. *Beagle, Beck* and *Williams* involved policies which used the wording "a farm-type tractor or *other* equipment" (emphasis added). One writer indicates the use of the word "other" before "equipment" may signify a broader exclusion. A. Widiss, A Guide to Uninsured Motorist Coverage § 2.30 (1969 & Supp.1978).

Our Supreme Court has adopted the rule that where language has been construed by several courts and they have reached conflicting results as to its meaning and effect, ambiguity is established. *Federal Insurance Co. v. P. A. T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976). In that case, the court quoted from the Tennessee case of *Alvis v. Mutual Benefit Health and Accident Association*, 201 Tenn. 198, 297 S.W.2d 643 (1956):

> If judges learned in the law can reach so diametrically conflicting conclusions as to what the language of the policy means, it is hard to see how it can be held as a matter of law that the language was so unambiguous that a layman would be bound by it. 113 Ariz. at 138, 547 P.2d at 1052.

The insureds, relying on the *Federal Insurance* case, contend that once we determine there is a split of authority as to coverage among other jurisdictions in the interpretation of similar insurance policies, we need not pursue the question of ambiguity any further.

The insurance company contends that the rule of *Federal Insurance* does not require a finding of ambiguity where the cases cited to show that there are conflicting decisions in other jurisdictions are based on facts and policies different from the case under consideration. *Manny v. Avemco Insurance Company*, 121 Ariz. 221, 589 P.2d 464 (1978).

■ From our review of the cases we find there are conflicting decisions from other jurisdictions involving similar policy coverage disputes, and that the rule in *Federal Insurance* has at least initial application in this case. However, we do not interpret the *Federal Insurance* case to mean that the courts of Arizona somehow are immune or lose jurisdiction to make decisions in insurance coverage disputes where two or more courts in other jurisdictions have disagreed in the interpretation of similar insurance policies. It appears that each court faced with an insurance policy ambiguity question must apply the policy terms to the individual fact situation under consideration, and then make an independent determination. It is our interpretation that the *Federal Insurance* case does hold that where various jurisdictions reach different conclusions as to the coverage under a similar insurance policy, such fact is a strong indication that the policy provisions are ambiguous.

■ There are also other applicable legal principles to follow in formulating our decision on the issue of ambiguity. The

language used in an insurance policy must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance. *Droz v. Paul Revere Life Insurance Co.,* 1 Ariz.App. 581, 405 P.2d 833 (1965). Where the language in an insurance policy is subject to more than one interpretation, such policy must be construed in favor of the insured and against the insurance company that drafted the policy. *D. M. A. F. B. Federal Credit Union v. Employers Mutual Liability Insurance Company of Wisconsin,* 96 Ariz. 399, 396 P.2d 20 (1964).

Applying the guidelines of *Federal Insurance, Droz* and *D.M.A.F.B. Federal Credit Union* to the policy dispute in this case, we conclude that the policy in question is ambiguous as viewed through the eyes of the average layman. The policy must therefore be construed in favor of coverage.

The judgment in favor of the insurance company is reversed and judgment is directed in favor of the insureds.

SCHROEDER, P. J., and JACOBSON, J., concurring.